# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BROOKLYN UNION GAS COMPANY | Case No. 1:17-cv-07476-MKB-VMS |
| Plaintiffs, | |
| v. | |
| EXXON MOBIL CORPORATION | |
| Defendant. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT EXXON MOBIL CORPORATION'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

---

John B. McCusker, Esq.
Rosemarie DaSilva, Esq.
McCUSKER, ANSELMI, ROSEN &
CARVELLI P.C.
805 Third Avenue, 12th Floor
New York, New York 10022
(212) 308-0070
*Attorneys for Defendant Exxon Mobil*
*Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL ARGUMENT ...................................................................................................... 8

    THIS COURT SHOULD GRANT EXXONMOBIL'S MOTION TO DISMISS
    GRID'S RCRA CLAIM IN ITS ENTIRETY

    I.     The Standard by which this Court Should Review National Grid's Pleading
          and Grant ExxonMobil's Motion to Dismiss Requires Plausibility ............................ 8

    II.    National Grid's RCRA Claim Seeking a Mandatory Injunction is Not
          Plausible ...................................................................................................................... 9

    III.   National Grid's Complaint Should Be Dismissed Under the Primary
          Jurisdiction Doctrine ................................................................................................... 14

    IV.   National Grid Cannot Recover Civil Penalties under RCRA ..................................... 17

CONCLUSION .................................................................................................................. 18

i

## Table of Authorities

**Supreme Court Opinions**                                                                                         Page(s)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................8

*Meghrig v. Kfc W.*, 516 U.S. 479 (1996) ...................................................13

**Federal Court Opinions**

*87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215 (S.D.N.Y. 2002)
................................................................................................................ 12, 13

*Anderson v. Davis Polk & Wardwell, L.L.P.* , 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ............ 8, 11

*Burnette v. Carothers*, 192 F.3d 52 (2d Cir. 1999) ................................................... 18

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ......................................... 2

*Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990 (D. Kan. 1997) ...............................14, 15

*Dmj Assocs. v. Capasso*, 228 F. Supp. 2d 223 (E.D.N.Y. 2002) ..................................... 15, 16, 17

*Friends of Santa Fe County v. Lac Minerals*, 892 F. Supp. 1333 (D.N.M. 1995) ............... 14, 15

*Kara Holding Corp. v. Getty Petrol. Mktg., Inc.*, 67 F. Supp. 2d 302 (S.D.N.Y. 1999) ............ 11

*Kara Holding Corp. v. Getty Petrol. Mktg.*, No. 99 Civ. 0275 (RWS), 2004 U.S. Dist. LEXIS
15864 (S.D.N.Y. Aug. 12, 2004) ....................................................................13

*Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57 (2d Cir. 2011) ...................... 8

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) .............................................2

*Phx. Bevs, Inc. v. Exxon Mobil Corp.*, No. 12-CV-3771 (PKC) (JO), 2015 U.S. Dist. LEXIS
16959 (E.D.N.Y. Feb. 11, 2015) ....................................................................... 10

*Porrazzo v. Bumble Bee Foods, L.L.C.*, 822 F. Supp. 2d 406 (S.D.N.Y. 2011) .......................... 2

*Sierra Club v. Chesapeake Operating, L.L.C.*, 248 F. Supp. 3d 1194 (W.D. Okla. 2017) .... 14, 15

**United States Code**

42 U.S.C. § 6928 (2012) ...................................................................... 2, 17

42 U.S.C. § 6972 (2012) ...................................................................2, 18

78, 42 U.S.C. § 3001 (2012) ...................................................................6

## PRELIMINARY STATEMENT

This action represents the most recent in a series of legal maneuvers by plaintiff, the Brooklyn Union Gas Company, d/b/a National Grid NY ("National Grid" or "Plaintiff") in an attempt to avoid liability for the remediation of contaminants present at, or emanating from, its former Williamsburg manufactured gas plant site ("Williamsburg MGP Site"). The single cause of action asserted by National Grid against Exxon Mobil Corporation ("Exxon Mobil") in its pending Complaint, alleging a violation of the Resource Conservation and Recovery Act ("RCRA"), fails to state a claim upon which relief may be granted in several respects. First, National Grid's claim confuses the purposes of RCRA with those of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") by pursuing it in an attempt to avoid solely financing the cleanup of contamination relating to its Williamsburg MGP Site. Second, National Grid's allegation of a supposed "imminent and substantial endangerment" has no factual support based on the environmental history of the subject properties. Third, National Grid's RCRA claim is based on a bogus premise - that it cannot fully remediate its own site without ExxonMobil's remediation of its formerly owned Refinery Site - which is directly contradicted by public documents, which show that the investigation/remediation of the Williamsburg MGP Site was occurring independently from any required environmental activities on the former Refinery Site. Fourth, the relief sought by National Grid's RCRA claim includes a mandatory injunction that is legally unsupportable in light of the remedial actions pending by the New York Department of Environmental Conservation ("DEC"). It further includes a request for civil penalties which are not available to a private RCRA plaintiff. Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

**STATEMENT OF FACTS**

In reviewing a motion to dismiss, the court may consider (1) the facts alleged in the complaint and documents attached in it by reference, (2) documents "integral" to the complaint and relied upon therein, even if not attached or incorporated by reference, (3) documents or information contained in a defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and have been filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *See, e.g., Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 410-11 (S.D.N.Y. 2011) (citing *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) and *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 152-53 (2d Cir. 2002)). Moreover, it is well-established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6). *Pani v. Empire Blue Cross Blue Shield*, 152 F. 3d 67, 75 (2d Cir. 1998); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F. 2d 42, 47-48 (2d Cir. 1991). The following sets forth a summary of the relevant allegations in the Complaint, which are accepted as true for purposes of this motion, along with the relevant facts contained in documents that this Court may consider under applicable law.

National Grid's pending Complaint asserts one cause of action against ExxonMobil only, seeking a mandatory injunction to implement remedial measures, civil penalties, and all costs of litigation, pursuant to RCRA, 42 U.S.C. § 6972(a)(1)(b); 42 U.S.C. § 6928. Cplt. p. 16. The claim is premised upon the alleged disposal and storage of solid and hazardous wastes at a property previously owned and/or operated by ExxonMobil and/or its predecessors on what National Grid defines as the former "Refinery Site" including Blocks 2294, 2277, part of 2282, and part of 2279,

in the Williamsburg section of Brooklyn, NY.  *Id.* at ¶ 6.  National Grid is the former

owner/operator of the Williamsburg MGP Site located on Blocks 2287, 2288 and part of 2283.

*See* 02/2014 DEC Fact Sheet for Site #224055, attached as Exhibit A to the Certification of John

B. McCusker, Esq., dated February 20, 2018 (the "McCusker Cert.").  The Williamsburg MGP

Site is adjacent to and bordered on two sides by the former Refinery Site. Cplt. ¶ 11.

Approximately one year ago, in January 2017, National Grid filed an Amended Complaint

in a separate litigation pending in this Court, at Docket 1:17-cv-00045, seeking costs under

CERCLA and New York's Navigation Law, predicated largely upon the same set of facts as those

pled here ("the CERCLA Litigation").  Am.Cplt. ¶1-21.  In the CERCLA Litigation, National Grid

seeks recovery of costs from several defendants, including ExxonMobil, relating to the

investigation and remediation of the Williamsburg MGP Site. *Id.* at ¶ 21.

This Complaint offers a blanket recitation of the legal elements of a RCRA claim, including

that nonmarketable petroleum wastes and other hazardous substances associated with the former

Refinery, "remain upon, and in the vicinity of, the Pratt Works Refinery Site in a manner that may

present an imminent and substantial endangerment to health and the environment." Cplt. ¶ 45.  It

further asserts that, on information and belief, "solid waste and hazardous substances have

migrated-and continue to migrate-onto the parcels of lands on which the Williamsburg MGP

[Block 2287] was located."  Cplt. ¶ 49.

While National Grid's Complaint alleges the required elements of RCRA, including the

existence of an "imminent and substantial endangerment," Cplt. ¶¶ 10, 12, 32, 45, 54, 65, its factual

allegations are complicated by the intricate history of investigation/remediation and DEC

involvement in the various parcels that make up National Grid's Williamsburg MGP Site and the

former Refinery Site.  National Grid appears to intentionally muddle that history with allegations

of current contamination to presumably support its rote recitation of "imminent and substantial endangerment." While it seeks a RCRA injunction requiring ExxonMobil to address alleged contamination on the former Refinery Site, National Grid intermixes allegations of contamination and remediation of its own Williamsburg MGP Site which blurs any purported connection between the alleged "imminent and substantial endangerment" with current site conditions.

The factual record of environmental investigation and remediation on the subject parcels simply does not support the existence of an "imminent and substantial endangerment" under RCRA. ExxonMobil and/or its predecessors have not owned or operated the former Refinery Site since 1951 – more than 65 years ago. *See* 12/26/1951 Deed from Socony-Vacuum Oil Co., Inc. to Maspeth Rail and Terminal Corp, attached as Exhibit B to the McCusker Cert. Since 1951, the former Refinery Site has had several owners and operators. *See* 08/04/1958 Deed from Maspeth Rail & Terminal Corp. to Paragon Oil Co., Inc.; 04/01/1979 Texaco, Inc. Major Petroleum Facility License No. 0469; 05/11/1993 Star Enterprise Major Petroleum Facility License No. 2-1240; 11/01/1997 Bayside Fuel Oil Depot Corp. Major Petroleum Facility License No. 2-1240, attached as Exhibits C, D, E and F, respectively, to the McCusker Cert. By way of example, from 1951-1997, ChevronTexaco and/or its affiliates owned the Site and operated a bulk oil terminal. *See* Exhibits B, C, D, E and F. In 1998 Star Enterprises, a predecessor of ChevronTexaco, entered into a Stipulation Agreement with the DEC for the investigation/remediation of the former Refinery Site. *See* 07/27/1998 Stipulation between DEC and Texaco Refining & Marketing, Inc., attached as Exhibit G to the McCusker Cert. In May 2003 the DEC outlined a "phased approach" to the remediation, and in early 2008 issued a NFI letter to ChevronTexaco. *See* 01/23/2008 Ltr. from L. Zielinski to G. Harris, attached as Exhibit H to the McCusker Cert. The remaining parcel identified in National Grid's pending RCRA claim as being included in the former Refinery Site,

part of Block 2282, is currently the subject of a Brownfields Agreement between the DEC and a developer. *See* 19 Kent Development LLC Citizen Participation Plan and Executive Summary of the Remedial Action Work Plan for Brownfield Cleanup Program Application; and 03/13/2015 Ltr. from R. Schick to 19 Kent Development LLC., attached as Exhibits I and J to the McCusker Cert.

As for its own Williamsburg MGP Site, National Grid alleges that "[t]he continued migration of contaminants precludes Plaintiff from fully and meaningfully remediating the former MGP site until Exxon investigates, characterizes, and remediates the Pratt Works Refinery Site." Cplt. ¶ 50. However, this purported factual allegation is directly contradicted by the public record and irrelevant to the alleged imminent and substantial endangerment allegedly emanating from the former Refinery Site.

In February 2007, National Grid and the DEC entered into an Order on Consent and Administrative Settlement regarding the investigation and remediation of multiple former MGPs that at one time were owned and/or operated by National Grid within New York State. Am.Compl. ¶ 136-138. The 2007 Consent Order consisted of an original "Order on Consent and Administrative Settlement" executed on February 22, 2007 (the "Feb. 2007 Consent Order") and a "Modification to Order on Consent and Administrative Settlement" executed on August 10, 2007 (the "Aug. 2007 Consent Order") attached hereto as Exhibits K and L to the McCusker Cert. The Aug. 2007 Consent Order added the former Williamsburg MGP Site to the sites addressed in the Feb. 2007 Consent Order. (collectively, the "Consent Order"). *Id.*

The Consent Order required National Grid to conduct certain investigations, and prepare reports, subject to DEC review and approval, for the investigative and remedial activities at each site. *See* Exhibit L, Consent Order at 5. Upon DEC approval, National Grid was required to

"implement such Work Plans in accordance with the schedule contained in such Work Plan." *Id.* None of the terms of the Consent Order or subsequent DEC communications required expedited action or referred to any required investigation or remediation of the former Refinery Site.

Since 2007, National Grid has performed investigative and remedial work at the Williamsburg MGP. However, on November 7, 2016, National Grid issued a notice unilaterally terminating the Consent Order. *See* 11/01/17 Article 78 Order, attached as Exhibit M to the McCusker Cert. By Order dated November 1, 2017, as a result of a proceeding pursuant to Article 78, Section 3001 of the New York Civil Practice Law, the Court set forth National Grid's remaining environmental obligations. *Id.* National Grid's remaining obligations include submission of a final engineering construction completion report. *Id.*

National Grid alleges that the DEC "has requested that Exxon investigate and remediate the Refinery Site, but, upon information and belief, Exxon has refused to do so." Cplt. ¶ 51. National Grid also alleges that "neither the EPA nor New York State is diligently prosecuting Exxon nor has it commenced any action under RCRA against Exxon to restrain or abate acts or conditions, which may have contributed to or are contributing to the activities which may present the alleged endangerment." Cplt. ¶ 60.

As set forth above, despite National Grid's contentions in its Complaint, the history of investigation and remediation in the subject area extends back several decades. During that time, the DEC was and continues to be actively involved in addressing the environmental condition of the subject parcels. At no time during the course of the environmental activities and/or the DEC involvement has there been an assertion or concern by anyone, including the DEC, of an "imminent or substantial endangerment."

In fact, it was National Grid's unilateral termination of the Consent Order and subsequent Notice of Intent to file a RCRA citizen suit that triggered DEC's current regulatory focus on the subject properties. Specifically, on November 27, 2017, the DEC responded to National Grid's September 20, 2017 Notice to file this RCRA citizen suit, providing the following status of the relevant parcels involved:

- **Block 2277**: the DEC is moving forward with an investigation using State funds.

- **Block 2287**: the DEC is providing notice to PRPs (including National Grid) to enter into an agreement to perform remediation or it will do so using State funds.

- **Block 2294:** the DEC has conducted investigatory work on this parcel and does not intend to conduct any further investigation.

*See* Cplt. Ex. A.

Recently, by letter dated January 5, 2018, the DEC made a demand to National Grid and the City of New York for regulatory characterization of the former Refinery Site (Block 2277). *See* 01/05/2018 Ltr. from B. Conlon to F. Murphy; and 01/05/2018 Ltr. from B. Conlon to D. Goodrich, attached as Exhibit N to the McCusker Cert. The demand imposed a deadline of February 15, 2018 for the PRPs (National Grid and NYC) to enter into an executed Consent Order with DEC. The DEC advised that if the parties did not execute a Consent Order, the DEC will perform the work and pursue cost recovery and enforcement. *Id.* The January 5, 2018 letter identifies National Grid as a PRP for contamination on the Williamsburg MGP Site ***and*** the Refinery Site. *Id.* The letter further states:

> [t]his . . . serves as an offer for National Grid to enter into an order on consent with the New York State Department of Environmental Conservation (the "Department") to finance and implement a remedial investigation and feasibility study ("RI/FS") for Lots 16 and 30 of Parcel 2287 to complete the requirement of the RI/FS study that the Department had previously requested national Grid to complete. Please be advised that if National Grid decides not to enter into an order on consent with the Department by February 15, 2018, the Department shall proceed to implement a RI/FS for Lots

7

16 and 30 of Parcel 2287 funded by the New York State Superfund, and that any costs incurred as well as any past costs and interest will be recoverable by New York State from the appropriate parties.  In addition, the Department is putting National Grid on notice that the Department had identified National Grid as a potentially responsible party and discharger of petroleum, at and from Parcel 2287, and that National Grid may be liable for both coal tar contamination and petroleum contamination at Parcel 2287 and 2277. The Department will be conducting investigatory work and upon completion of that work, the Department will seek cost recovery and enforcement against any and all responsible parties for their failure to timely address their contamination.

*Id.*

As set forth below, the above facts as alleged by National Grid in its pending Complaint, alleged by National Grid in its Amended Complaint in its separately pending CERCLA Litigation, and those found in public documents about which this Court can take judicial notice, supports the dismissal of National Grid's pending RCRA Complaint in its entirety.

## LEGAL ARGUMENT

### THIS COURT SHOULD GRANT EXXONMOBIL'S MOTION TO DISMISS GRID'S RCRA CLAIM IN ITS ENTIRETY

**I.    The Standard by which this Court Should Review National Grid's Pleading and Grant ExxonMobil's Motion to Dismiss Requires Plausibility.**

On a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, this Court must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Matson v. Bd. of Educ.*, 631 F. 3d 57, 63 (2d Cir. 2011).  However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor is it required to accept "factual allegations that are . . . contradicted by exhibits." *Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012) (citation omitted).  Therefore, ExxonMobil's pending motion should be granted if National Grid's Complaint does not contain "enough facts to state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009); *see Iqbal*, 556 U.S. at 678. Together, the *Iqbal* and *Twombly* decisions hold that a plaintiff must "state sufficient, factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.*

First, the court is to identify the elements of the claim, so the court can disregard those allegations that simply restate the elements. *Iqbal*, 556 U.S. at 679. Second, the court is to determine the plausibility of the claim on the remaining factual content. *Id.* Here, National Grid's pleading falls short of these standards. Specifically, National Grid appears to hope that this Court assumes the truth of its bald allegation regarding the presence of an imminent and substantial endangerment – the *sine qua non* element of its RCRA claim - where it is simply not plausible in light of the factual content of its Complaint as well as relevant documents about which this Court can take judicial notice, including: (1) National Grid's own decade-long investigation/remediation efforts that were performed, and DEC supervised, without accelerated scheduling; (2) National Grid's single-handed termination of its Consent Order with the DEC pursuant to which it was conducting investigation/remediation and National Grid's remaining obligation related thereto; and (3) the DEC's currently pending activity aimed at remediating National Grid's Williamsburg MGP Site as well as the surrounding parcels. As set forth below, once unraveled, National Grid's allegations do not support a plausible RCRA claim.

## II.   **National Grid's RCRA Claim Seeking a Mandatory Injunction Is Not Plausible.**

It has long been recognized that the purpose of RCRA does <u>not</u> include "effectuat[ing] the cleanup of toxic waste sites." *Mehrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996). Unlike RCRA, on the other hand, the purposes of CERCLA <u>do</u> include "prompt cleanup of hazardous waste sites." *Id.* (*quoting Gen. Elec. Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415,

1422 (8th Cir. 1990)).  Unquestionably, National Grid's pleading has turned these environmental statutes upside down by seeking to achieve CERCLA goals with its RCRA claim.[1]  In doing so, National Grid asserts the following:

> 51. The [DEC] has requested that Exxon investigate and remediate the Refinery Site . . . but, upon information and belief, Exxon has refused to do so.

> 52. The [DEC] has requested that National Grid investigate and remediate the Williamsburg MGP Site, and has stated that if National Grid fails to do so, it will conduct the investigation using State Superfund money and then seek to recovery [sic] its costs from National Grid. . . .

> 53. Unless and until Exxon investigates and remediates the Refinery Site, Plaintiff will be forced to investigate and remediate contamination that has migrated from the Refinery site to the Williamsburg MGP Site, or to pay the [DEC's] costs for investigating and remediating Exxon's contamination at the Williamsburg MGP Site.

*See* Cplt. ¶¶ 51-53.

Faced with the potential dismissal of its claims for contribution under CERCLA that are pending before this Court in the CERCLA Litigation on statute of limitations grounds, National Grid's newest strategy appears to be to strong-arm the DEC with forced Court involvement in dictating remediation decisions involving its Williamsburg MGP Site and the surrounding properties.  As detailed above, National Grid was remediating its Williamsburg MGP Site for approximately ten years pursuant to the Consent Order when National Grid single-handedly decided to terminate its Consent Order and cease its ongoing remediation.  But for National Grid's unilateral termination of the Consent Order, the Williamsburg MGP Site would have been investigated/remediated to DEC standards and National Grid's legal recourse would be through a CERCLA contribution action.  National Grid cannot perpetrate an end-run-around the statute of

---

[1] *See Phoenix Bevs., Inc. v. Exxon Mobil Corp.*, 2015 U.S. Dist. LEXIS 16959, at *23-24 (E.D.N.Y. Feb. 11, 2015) (recognizing the divergent purposes of RCRA and CERCLA).

limitations applicable to its CERCLA contribution claims, the subject of pending motions to dismiss in the CERCLA Litigation, or avoid its legal obligations. Its intent to do so is obvious from its allegation here that "[u]nless and until Exxon investigates and remediates the Refinery Site, Plaintiff will be forced to investigate and remediate contamination that has migrated from the Refinery site to the Williamsburg MGP Site, or to pay the [DEC's] costs for investigating and remediating Exxon's contamination at the Williamsburg MGP Site." *See* Cplt. ¶ 53.

Not only do National Grid's express allegations reveal its misplaced CERCLA-related motivation for its RCRA claim, *i.e.*, financing remediation of its Williamsburg MGP Site, but they also expose them to be based upon an entirely false premise. Specifically, National Grid alleges:

> . . . continued migration of contaminants [from ExxonMobil's former Refinery Site] precludes Plaintiff from fully and meaningfully remediating the former MGP site until Exxon investigates, characterizes, and remediates the Refinery Site.

*See* Cplt. ¶ 50. Importantly, in determining ExxonMobil's motion to dismiss, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal, supra*, 556 U.S. at 678, nor should it accept "'factual allegations that are . . . contradicted by exhibits'" or documents about which this Court can take judicial notice. *Anderson, supra*, 850 F. Supp. 2d at 407. National Grid's above quoted allegation is directly contradicted by DEC documents, one of which National Grid attached to its Complaint and others of which this Court can take judicial notice. First, National Grid entered into the Consent Order to remediate its Williamsburg MGP Site back in 2007, the DEC supervised the remedial work conducted by National Grid without any need for ExxonMobil's remediation of the former Refinery Site. Moreover, had National Grid not independently terminated its Consent Order, remediation of its Williamsburg MGP Site would have been completed pursuant to DEC acceptable levels - again, regardless of remediation of the former Refinery Site.

Finally, while, under relevant case law, DEC's letter of intent to sue National Grid and the City of New York is not a bar in-and-of-itself to National Grid's pending RCRA citizen suit, *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, 67 F. Supp. 2d 302, 307 (S.D.N.Y. 1999), it undermines the factual premise alleged by National Grid to be the driver of its RCRA claim. Unquestionably, remediation of the former Refinery Site is unnecessary for National Grid to pursue remediation of its Williamsburg MGP Site; its planning is underway in due course. The terms of National Grid's Aug. 2007 Consent Order and the schedule of work regarding the Williamsburg MGP and surrounding parcels makes National Grid's allegation of an imminent endangerment simply not plausible.

Not only is the underlying premise of Grid's RCRA claim faulty, but with the DEC addressing the environmental conditions of both National Grid's Williamsburg MGP Site and the Refinery Site, along with the various adjacent and neighboring parcels, there is ultimately no equitable relief that can even be had here. With its RCRA claim, National Grid seeks a mandatory injunction ordering ExxonMobil "to immediately investigate and remediate the Pratt Works Refinery Site to take all actions necessary to address imminent and substantial endangerment that may be presented by the solid and hazardous wastes at the Pratt Works Refinery Site." *See* Cplt. p.16. With the DEC's pending notices to National Grid and the City of New York, the target of such a mandatory injunction is misplaced.

In this regard, although reached in the context of a summary judgment motion and toward completion of DEC remedial activity, the Court's analysis as to propriety of a RCRA injunction in *87th St. Owners Corp. v. Carnegie Hill-87th St. Corp.*, 251 F. Supp. 2d 1215, 1219-22 (S.D.N.Y. 2002) is instructive here as follows:

> Broad as these powers may be, however, they are granted [under RCRA] for a
> particular purpose. The Court may only "restrain" the hazardous waste handling or

disposal that 'may present an imminent and substantial endangerment to health or the environment,' or order actions that may be 'necessary' to eliminate that danger. Here, since the actions that allegedly created the danger are in the past, and there is no allegation that defendant is currently engaged in any action that presents a risk to public health or the environment, there is nothing to "restrain." And, despite repeated requests from the Court, plaintiff has been unable to describe a single action that defendant could be ordered to take to reduce or eliminate any risk its past actions may have caused, that is not already being undertaken by DEC. *** The Court's RCRA jurisdiction extends only to the provision of injunctive relief to remove, to the extent possible, the danger to health and safety, not to determine blame for the condition in order to determine who is responsible, under state law, for reimbursing the state for actions taken by state agencies that have already done everything that can be done to improve the situation.

*Id.* (emphasis added).  *See also Kara Holding Corp. v. Getty Petroleum Mktg.*, 2004 U.S. Dist. LEXIS 15864, at *30-33 (S.D.N.Y. Aug. 12, 2004) ("In order for Kara's claim for injunctive relief [under RCRA] to survive, it 'would have to identify some action that defendant could be ordered to take that is not already in place thanks to the action of the state agency and that would improve the situation in some way.' . . . while Kara has proposed an action that may improve the situation over the remediation currently in place and approved by NYSDEC, it has not shown that the current remediation is not sufficient to address any danger to health or the environment. . . . When the agency charged with overseeing petroleum remediation has found that the systems currently in place are sufficient to abate the danger, no further action is necessary.") (*citing* 87th Street Owners, Corp., *supra*).

The implausibility of National Grid's bald allegation that there is an imminent and substantial endangerment is furthered by its muddling of the historical uses and current condition of the Williamsburg MGP Site and the former Refinery Site. National Grid's pleading chronicles the historical uses of the former Refinery Site from a century ago by ExxonMobil's predecessors and mixes in allegations of the current presence of contaminants of concern ("COCs") on its own Williamsburg MGP Site while seeking a mandatory injunction to require ExxonMobil to remediate the former Refinery Site. It is axiomatic that a RCRA injunction must obviously aim to address

13

the alleged imminent endangerment itself. *See, e.g., Meghrig, supra*, 516 U.S. at 483 ("RCRA's primary purpose [is]. . . to ensure the proper treatment, storage, and disposal . . . 'so as to minimize the present and future threat to human health and the environment.'") (*citing* RCRA, 42 U.S.C. § 6902(b)). But, here, National Grid confuses the current contamination of its Williamsburg MGP Site with the target of its sought-after RCRA injunction – the adjacent former Refinery Site. National Grid's RCRA theory suffers from a missing factual and legal link that further weakens its plausibility.

Accordingly, ExxonMobil respectfully submits that this Court should dismiss National Grid's RCRA claim seeking a mandatory injunction ordering ExxonMobil to address the former Refinery Site.

## III.  National Grid's Complaint Should Be Dismissed Under the Primary Jurisdiction Doctrine.

The Court should also dismiss National Grid's Complaint without prejudice under the common law doctrine of primary jurisdiction, which grants "flexible discretion to refer certain matters to the specialized competence of an administrative agency which [ ] is exercising continuing jurisdiction over those matters." *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F.Supp. 1333, 1349 (D.N.M. 1995). Abstention under the primary jurisdiction doctrine is appropriate when "the agency and the court entertaining Plaintiffs' claims have concurrent jurisdiction, and the claims are properly cognizable in federal court, but the court believes it prudent to decline to exercise its jurisdiction in favor of the agency's expertise." *Id.; see also Davies v. Nat'l Coop. Ref. Ass'n,* 963 F. Supp. 990, 999 (D. Kan. 1997) (dismissing RCRA citizen suit based upon primary jurisdiction doctrine in order to allow state agency to "continue its investigation, supervision, and remediation of the site without the prospect of conflicting directives from this court as to how the contamination should be remedied"); *Sierra Club v. Chesapeake*

*Operating, LLC,* 248 F. Supp. 3d 1194, 1209 (W.D. Okla. 2017) (dismissing RCRA citizen suit based upon primary jurisdiction).

Application of the primary jurisdiction doctrine is flexible and lies within the broad discretion of the Court. *Friends of Santa Fe,* 892 F.Supp. at 1349. While courts commonly evaluate several factors when deciding whether to invoke the doctrine, such as whether the relevant agency is properly exercising its enforcement authority, whether judicial involvement may lead to conflicting orders, and the type of relief being requested, "no fixed formula constrains the Court's exercise of its discretion to invoke the doctrine, as the determination is largely fact-specific." *Id.; see also Sierra Club,* 248 F. Supp. 3d at 1205 (identifying variety of factors that a court may consider when deciding whether to apply primary jurisdiction doctrine). In this respect, cases addressing whether a court should abstain in a RCRA citizen suit based upon primary jurisdiction are split and dependent upon the facts of the case. *See, e.g., Davies,* 963 F. Supp. at 997 (noting split in authority); *see also DMJ Assocs. v. Capasso,* 228 F. Supp. 2d 223 (E.D.N.Y. 2002) (declining to invoke primary jurisdiction). Here, as in *Friends of Santa Fe, Davies, and Sierra Club,* a dismissal without prejudice in order to allow the DEC to continue with its on-going efforts at addressing the environmental conditions of the subject properties with multiple potentially responsible parties without the possibility of conflicting orders attendant to litigation is "prudent" and, therefore, appropriate under the primary jurisdiction doctrine.

One of the principal factors that courts evaluate when deciding whether to abstain based upon primary jurisdiction is whether the relevant agency has already begun an enforcement proceeding or is otherwise already acting to address the underlying issues. *See, e.g., Sierra Club,* 248 F. Supp. 3d at 1208*; Friends of Santa Fe,* 892 F. Supp. at 1350; *Davies,* 963 F. Supp. at 998. It is not necessary for the agency to have instituted legal proceedings or otherwise initiated a formal

enforcement action in order for this factor to weigh in favor of abstention.  For example, in *Sierra Club*, the court invoked primary jurisdiction to dismiss the plaintiff's RCRA citizen suit even though the state agency had "not initiated any formal agency proceedings" because the court found that the agency had "nonetheless taken a series of actions" to respond to the underlying issues. 248 F. Supp. 3d at 1208.

As set forth at length above, the DEC has been overseeing the environmental activities at the Williamsburg MGP Site and has been addressing the environmental conditions on the surrounding properties in an orderly and deliberate fashion.  In response to National Grid's RCRA Notice, the DEC requested an investigation on certain portions of the former Refinery Site.  Again, the DEC has noted that it will conduct the work itself if the parties do not do so.  *See* Cplt. Ex. A. In other words, DEC has a plan in place to ensure that the investigation and remediation of the subject properties proceeds in an efficient manner, and it is dutifully exercising its enforcement authority to implement that plan.

Another factor in determining whether a court should abstain based upon primary jurisdiction is whether the court's exercise of its jurisdiction may undercut the agency's efforts to carry out its duties.  Here, National Grid's lawsuit is designed to interfere with DEC's efforts.

In this respect, this case is not like other cases in which courts have been reluctant to invoke the primary jurisdiction doctrine.  For example, in *DMJ,* this Court declined to abstain in a RCRA citizen suit because it found that the plaintiff's claim was permissible under RCRA and there was no evidence that the litigation "would interfere with the RI/FS…." 228 F. Supp.2d at 230.  There, the plaintiff had a security interest in a property that was allegedly being impacted by contamination migrating from an adjacent property that was being investigated by the defendants under the oversight of the DEC, and plaintiff filed suit to ensure that the remedial activities at the

adjacent property would adequately assess the potential threat to plaintiff's own property. *Id.* at 224. Unlike National Grid, the plaintiff was under no regulatory obligation to itself investigate or remediate the alleged contamination at issue. Moreover, DEC personnel specifically testified that the litigation would not disrupt the RI/FS process occurring at the adjacent property, and that the requested relief (the installation of several additional monitoring wells) would not be contrary to any directions that the agency issued during the course of the investigation. *Id.* at 226-27, 231. Under that set of facts, the Court concluded that there was no need to abstain. Implicit in its decision, however, was recognition that dismissal of a RCRA claim based upon primary jurisdiction may be appropriate if the lawsuit will interfere with the agency's efforts.

Here, in contrast to *DMJ*, the DEC has specifically directed National Grid to conduct a RI/FS at the Williamsburg MGP, and further, has notified National Grid of its potential liability at the former Refinery Site as well. Moreover, after National Grid filed its RCRA suit, DEC responded with a letter notifying National Grid that DEC was already engaging with the current and former owners of the former Refinery Site about a limited investigation at the property. In other words, DEC has announced its clear intention to address the environmental issues on the subject properties.

## IV.    National Grid Cannot Recover Civil Penalties under RCRA

Along with its request for a mandatory injunction, National Grid's RCRA claim also seeks civil penalties pursuant to 42 U.S.C. § 6928. *See* Cplt. p.16. This request has no support in the express terms of the RCRA statute and has been explicitly held to be unavailable for private plaintiffs. Pursuant to RCRA's civil penalty provision, 42 U.S.C. § 6928(g), "any person who violates any requirements of this subtitle . . . shall be liable *to the United States* for a civil penalty . . . ." (emphasis added). Accordingly, recovery of civil penalties is available for a claim brought

by the United States; they are not authorized for private citizen suits under RCRA.  Indeed, the Second Circuit has specifically held that "[t]he statutes at issue do not grant citizens the right to sue on behalf of the United States nor do they establish a formula for recovering civil penalties. To the contrary, the citizen suit provisions authorize 'any citizen [to] commence a civil action on his *own* behalf.'  The United States is not, therefore, the real party in interest here." *See Burnette v. Carothers*, 192 F.3d 52, 58 (2d Cir. 1999) (emphasis in original) (*citing* Clean Water Act, 33 U.S.C. § 1365(a), and RCRA, 42 U.S.C. § 6972; 42 U.S.C. § 9659).

Because National Grid's request for civil penalties is not supported in RCRA or its interpretive case law, ExxonMobil respectfully submits that it should be dismissed along with the entirety of the RCRA claim.

## CONCLUSION

For the foregoing reasons, this Court should grant ExxonMobil's motion to dismiss National Grid's Complaint in its entirety as it fails to state a claim for relief under RCRA.  There is simply no plausible basis for National Grid's bald allegations relating to the former Refinery Site that support a RCRA mandatory injunction in light of the following documented facts: (1) National Grid's previous remedial work on a non-accelerated basis pursuant to its Aug. 2007 Consent Order with the DEC; (2) National Grid's independent termination of that Consent Order, which stalled the remediation of its Williamsburg MGP Site and triggered DEC action and National Grid's remaining obligation; (3) the DEC's participation in National Grid's Consent Order to complete the remediation of its Williamsburg MGP Site without the tangential remediation of the former Refinery Site; (4) the DEC's recent letter of intent to offer National Grid to enter into a second Consent Order mandating the remediation of its Williamsburg MGP Site or its intent to initiate remediation on the State's behalf; and, finally, the DEC's recent letters to

National Grid and the City of New York addressing the environmental conditions on both National Grid's Williamsburg MGP Site and the Refinery Site.   These facts undermine the unfounded factual allegations of National Grid's RCRA claim, *i.e.*, that, it cannot fully remediate its Williamsburg MGP Site without ExxonMobil addressing the former Refinery Site and that there exists an imminent and substantial endangerment on the former Refinery Site that supports its claim for a RCRA mandatory injunction.

Respectfully submitted,

McCUSKER, ANSELMI, ROSEN, & CARVELLI P.C.
805 Third Avenue, 12th Floor
New York, New York 10022
(212) 308-0070
*Attorneys for Defendant Exxon Mobil Corporation*

John B. McCusker

Dated: February 20, 2018

19