IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BROOKLYN UNION GAS COMPANY,<br><br>    Plaintiff,<br><br>  -against-<br><br>EXXON MOBIL CORPORATION,<br><br>    Defendant. | **OPPOSITION TO EXXON MOBIL CORPORATION'S MOTION TO DISMISS**<br><br>Civil Action 1:17-cv-07476-MKB |

**THE BROOKLYN UNION GAS COMPANY'S RESPONSE TO
EXXON MOBIL CORPORATION'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ...............................................................................................................5

I.      BUG'S CITIZEN SUIT IS APPROPRIATELY PLEADED AND
        WITHSTANDS EXXON'S *TWOMBLY/IQBAL* CHALLENGE. .....................................5

        A.      RCRA Explicitly Allows This Lawsuit. ............................................. 7

        B.      BUG's RCRA Claim is "Plausible" Based on the Imminent and
                Substantial Endangerment Pleaded in BUG's Complaint. .................... 12

        C.      BUG's RCRA Claim is Plausible Based on the Historical Uses of
                the Refinery Site and the Adjacent MGP Site. ................................... 15

II.     EXXON'S PRIMARY JURISDICTION ARGUMENTS ARE
        INCORRECT AND SHOULD BE REJECTED. .............................................17

        A.      Primary Jurisdiction is Inappropriate Where RCRA's Statutory
                Bars on Citizen Suits Have Not Been Triggered. ................................ 18

        B.      Exxon Fails to Establish that NYSDEC has Primary Jurisdiction
                over the Refinery Site. ................................................................ 19

        CONCLUSION ....................................................................................24

## TABLE OF AUTHORITIES

Page

**Cases**

*87th St. Owners Corp. v. Carnegie Hill-87th Corp.*, 251 F. Supp. 2d 1215 (S.D.N.Y. 2002)  4, 11

*Adkins v. VIM Recycling, Inc.*, 644 F.3d 483 (7th Cir. 2011) ..................................................... 7, 8

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ............................... 6, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 5, 6

*Baykeeper v. NL Industries, Inc.*, 660 F.3d 686 (3d Cir. 2011) ..................................................... 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 5, 6

*City of Evanston v. N. Ill. Gas Co.*, 229 F. Supp. 3d 714 (N.D. Ill. 2017) ................................... 16

*City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817 (N.D. Ill. 2014) ....................................... 16

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ...................... 17

*Dague v. City of Burlington*, 935 F.2d 1343, 1355-56 (2d Cir. 1991), *rev'd in part on other grounds sub nom. City of Burlington v. Dague,* 505 U.S. 557 (1992) .................................. 4, 14

*Davies v. Nat'l Coop. Ref. Ass'n*, 963 F. Supp. 990 (D. Kan. 1997) ............................... 19, 20, 21

*DMJ Assocs., L.L.C. v. Capasso*, 228 F. Supp. 2d 223 (E.D.N.Y. 2002) .................................... 18

*Echternach v. D.H. Martin Petroleum Co.*, Case No. 97 C 3802, 1997 WL 627646 (Sept. 30, 1997) ........................................................................................................................................ 8

*Envtl. Def. Fund v. EPA*, 465 F.2d 528, 535 (D.C. Cir. 1972) .................................................... 14

*Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F. Supp. 1333 (D.N.M. 1995) .. 19, 20, 21

*Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Assoc.*, 917 F. Supp. 251 (S.D.N.Y.1996) ................................................................................................................................................ 9, 10

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 476 F. Supp. 2d 275 (S.D.N.Y. 2007 ........................................................................................................................................ 22

*Inc. Village of Garden City v. Genesco, Inc.*, Case No. 07-cv-5244, 2009 WL 3081724, at *8-*9 (E.D.N.Y. Sept. 23, 2009) ............................................................................................ 12, 18, 21

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 263 F. Supp. 2d 796 (D.N.J. 2003) .................... 23

*Kara Holding Corp. v. Getty Petroleum Mktg.*, 67 F. Supp. 2d 302 (S.D.N.Y. 1999) ............. 9, 10

*Kara Holding Corp. v. Getty Petroleum Mktg.*, No. 99 CIV. 0275, 2004 WL 1811427 (S.D.N.Y. Aug. 12, 2004) .............................................................................................................................. 11

*Lambrinos v. Exxon Mobil Corp.*, Case No. 1:00-cv-1734, 2004 WL 2202760 (N.D.N.Y. Sept. 29, 2004) ................................................................................................................................ 9, 22

*Maine People's Alliance v. Holtrachem Mfg. Co., LLC,* No. 1:00-CV-00069-JAW, 2001 WL 1602046 (D. Me. Dec. 14, 2001), ...................................................................................... 22

*Maine People's Alliance v. Holtrachem Mfg. Co., LLC,* No. 1:00-CV-00069-JAW, 2015 WL 5155573 (D. Me. Sept. 2, 2015) ................................................................................ 23

*Marcas, L.L.C. v. Bd. of Cty. Comm'rs of St. Mary's Cty.,* 977 F. Supp. 2d 487 (D. Md. 2013) . 23

*Meghrig v. KFC Western, Inc.,* 516 U.S. 479 (1996) ....................................................... 5

*Murtaugh v. New York,* 810 F. Supp. 2d 446 (N.D.N.Y. 2011) ....................................... 17

*N.Y. Comms. for Change v. New York City Dep't of Educ.,* Case No. 11-cv-3494, 2012 WL 7807955 (E.D.N.Y. Aug. 29, 2012), *report and recommendation adopted,* 2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013) ............................................................................................. 18

*Nashua Corp. v. Norton Co.,* 116 F. Supp. 2d 330 (N.D.N.Y. 2000) ................................ 7

*O'Leary v. Moyer's Landfill, Inc.,* 523 F.Supp. 659 (E.D. Pa. 1981 ............................... 20

*Phoenix Beverages, Inc. v. Exxon,* Case No. 12-cv-3771, 2015 WL 588826 (E.D.N.Y. Feb. 11, 2015) ......................................................................................................................... 4

*PMC, Inc. v. Sherwin-Williams Co.,* 151 F3d 610, 619 (7th Cir. 1998), *cert. denied,* 525 U.S. 1104 (1999) ................................................................................................................ 18

*Sierra Club v. Chesapeake Operating, LLC,* 248 F. Supp. 3d 1194 (W.D. Okla. 2017)... 9, 19, 21, 22, 23

*Stewart-Sterling One LLC v. Tricon Global Rests., Inc.,* 2002 WL 1837844 (E.D. La. Aug. 9, 2002) ......................................................................................................................... 18

*Todd v. Exxon Corp.,* 275 F.3d 191, 2013 (2d Cir. 2001) .............................................. 16

*United States v. E.I. du Pont de Nemours & Co.,* 341 F. Supp. 2d 215 (W.D.N.Y. 2004) .... 14, 15

*United States v. Price,* 688 F.2d 204 (3d Cir. 1982) ..................................................... 4

*Wilson v. Amoco Corp.,* 989 F. Supp. 1159, 1170 (D. Wyo. 1998) ................................. 20

## Other Authorities

1984 U.S. Code Cong. & Admin. News 5576, 5612 .................................................... 8

42 U.S.C. § 6972(a)(1)(A) ......................................................................................... 11

42 U.S.C. § 6972(a)(1)(B) ...................................................................................... 1, 3, 5

42 U.S.C. § 6972(b)(1)(B) ...................................................................................... 7, 10

42 U.S.C. § 6972(b)(1)(C) ...................................................................................... 3, 7, 8

42 U.S.C. § 9604 ...................................................................................................... 7

H.R. Rep. No. 98–198, 1, 98th Cong., 2nd Sess., pt. 1, at 53 (1984) ............................ 8

N.Y. Nav. Law § 170 ................................................................................................ 10

## PRELIMINARY STATEMENT

The Brooklyn Union Gas Company d/b/a/ National Grid NY ("BUG" or "National Grid") has pleaded a simple, straightforward, and plausible citizen suit under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), based on these facts: starting about 150 years ago, Exxon's predecessors operated a large oil refinery located in Brooklyn, which abutted BUG's Williamsburg Manufactured Gas Plant ("MGP") on two sides. (Compl., ECF No. 1 ¶¶ 6, 11.) Exxon's operations at its refinery continued for over half a century and caused or contributed to the handling, treatment, and disposal into the environment of solid and hazardous substances that remain on, and adjacent to, Exxon's former property. (*Id.* ¶¶ 7-10, 27-45.)

It is important to note that BUG has conducted significant investigation and remediation work at the site of BUG's former MGP (the "MGP Site"); the work to date has cost approximately $35 million. But contamination migrating from the site of Exxon's former refinery (the "Refinery Site") to the MGP Site precludes BUG from fully and meaningfully remediating the former MGP Site unless and until Exxon takes steps to remediate the Refinery Site. (*Id.* ¶¶ 49-54.) BUG has, over a period of years, sought to motivate Exxon to investigate, characterize, and if necessary remediate wastes associated with Exxon's predecessors' operations adjacent to BUG's former MGP. BUG's efforts have included the following:

- First informally, and then formally, requesting that Exxon investigate its past operations;

- Seeking (unsuccessfully) to have the New York State Department of Environmental Conservation ("NYSDEC") compel Exxon to investigate;

- Serving a notice of intent to sue under RCRA on Exxon on September 21, 2017; and

- Suing Exxon – and every other material party that, to BUG's knowledge, operated in the vicinity of the site at issue here – under CERCLA and various state statutes. (*See The Brooklyn*

*Union Gas Company v. Exxon Mobil Corp., et al.*, 1:17-cv-00045-MKB-ST, ECF No. 1) (CERCLA cost recovery and contribution action against fifteen entities, including Exxon).

Despite these efforts, as of the date of filing of this brief – and, more crucially, as of the date BUG's Complaint was filed – BUG has had no success convincing Exxon to behave reasonably and address the contamination Exxon's actions caused. Other than a flurry of legal papers in the parallel CERCLA action, the only tangible outcome thus far is a series of letters from NYSDEC. The first letter, dated November 27, 2017 and attached as Exhibit A to the Complaint, indicates that:

> [T]he Department will be moving forward to conduct an investigation on Block 2277 [the northern Exxon parcel] using Oil Spill Fund money .... [While] some investigatory work has been completed on Parcel 2294 [the southern Exxon parcel], a structure impedes further investigation. DEC has sufficient information from the previous investigatory work and does not intend to perform additional investigatory work at this time.

(Compl., Ex. A at 1-2.) It also identified both BUG and Exxon as potentially responsible parties at the Site; stated that "despite repeated requests by the Department, National Grid, the Parties [including Exxon], and the City of New York have failed to properly investigate the contamination at the Site[;]" and warned that NYSDEC would at some unspecified point in the future begin an investigation on Block 2277 (part of the Refinery Site, *see* Compl. ¶¶ 7, 34) using Oil Spill Fund money. (*Id.*, Ex. A at 1.) Another letter by NYSDEC dated January 5, 2018 threatened – again at some unspecified point in the future – to begin a remedial investigation and feasibility study ("RI/FS") at Block 2287 (the former MGP Site) using State Superfund money. (*See* McCusker Certification Ex. N.)

As of the date BUG filed its Complaint, there was no pending federal or state enforcement suit or regulatory action concerning either the Refinery Site or the MGP Site that

would bar BUG's RCRA action.[1] A State's actions only bar a RCRA citizen suit where the State has commenced and is diligently prosecuting its own enforcement action under RCRA, is engaging in a removal action under CERCLA, or has initiated an RI/FS and is proceeding with a remedial action under CERCLA. *See* 42 U.S.C. § 6972(b)(1)(C). NYSDEC has done none of those things. At best, NYSDEC has directed multiple parties to commit to unspecified future work and threatened consequences at some undefined point in the future. These vague admonitions do not preclude a RCRA suit.

At any point over the last several years, Exxon could have stepped forward to investigate and remediate the contamination at (and migrating from) its former refinery. Exxon's latest opportunity to do so was in the 90-day window between the filing of this lawsuit and when BUG gave Exxon and NYSDEC the required notice of its intent to sue. Yet Exxon has consistently refused to investigate and remediate the effects of its decades of operations at the Refinery Site.

Exxon now argues that NYSDEC's latest vague admonishment that an investigation should be performed at the Refinery Site renders BUG's lawsuit implausible or, failing that, that this Court should decline to exercise jurisdiction over BUG's claims so that NYSDEC may at long last force Exxon to act. Exxon's meritless motion to dismiss is just the latest in a long line of delaying tactics. The Court should not reward Exxon for its recalcitrance, and instead should deny its motion, for the following reasons:

- BUG sued Exxon under RCRA's "imminent and substantial endangerment" provision, 42 U.S.C. § 6972(a)(1)(B), which is designed to require parties who engaged in past disposal of hazardous waste to investigate, and if necessary, remediate it. Taking the allegations in the Complaint as true – as the Court must on this motion – Exxon's historic disposal of hazardous

---

[1] Per NYSDEC's request, BUG has provided NYSDEC copies of the Complaint and will provide it with copies of this pleading.

waste at the Refinery Site renders it liable under Second Circuit precedent broadly construing RCRA's "'expansive language', which is 'intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate *any risk* posed by toxic wastes.'"  *Dague v. City of Burlington*, 935 F.2d 1343, 1355-56 (2d Cir. 1991) (emphasis in original) (quoting *United States v. Price*, 688 F.2d 204, 213-214 (3d Cir. 1982)), *rev'd in part on other grounds sub nom. City of Burlington v. Dague*, 505 U.S. 557 (1992); *accord*, *87th St. Owners Corp. v. Carnegie Hill-87th Corp.*, 251 F. Supp. 2d 1215, 1217-18 (S.D.N.Y. 2002) (collecting cases). BUG has adequately pleaded an imminent and substantial endangerment based upon Exxon's historic disposal of hazardous waste and BUG's inability to remediate its adjacent MGP Site completely if the Refinery Site is not also remediated.

- Contrary to Exxon's baseless arguments, BUG has no obligation under RCRA to explain why NYSDEC has not forced BUG (or Exxon) to more rapidly investigate and remediate their sites; in fact, NYSDEC's reluctance to force Exxon to act highlights the need for BUG's suit.[2]

- The terminated consent decree between BUG and NYSDEC to remediate the adjacent former MGP site does not preempt BUG's current RCRA suit.

- Dismissal on the basis that state regulators have "primary jurisdiction" is inappropriate because NYSDEC has failed to direct investigation or remediation of the Refinery Site so as to suggest that this Court should refrain from ordering Exxon to act.

    For this and the other reasons set forth below, Exxon's Motion should be denied.[3]

---

[2] The cases upon which Exxon relies to support its arguments to the contrary are procedurally distinguishable. *Phoenix Beverages, Inc. v. Exxon*, Case No. 12-cv-3771, 2015 WL 588826 (E.D.N.Y. Feb. 11, 2015) involved the denial of a preliminary injunction, and *87th St. Owners Corp. v. Carnegie Hill-87th Corp.,* 251 F. Supp. 2d 1215 (S.D.N.Y. 2002), was a summary judgment decision, involving a site where state regulators had already imposed a remedy.

[3] BUG concedes Exxon's point related to the availability of civil penalties in actions and agrees that the language related to this point should be stricken from the complaint.

## ARGUMENT

"Under a plain reading of [RCRA], a private citizen … [can] seek a mandatory injunction, *i.e.* one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste …." *Meghrig v. KFC Western, Inc*., 516 U.S. 479, 484 (1996).[4] The citizen suit provision of RCRA is designed to allow citizen plaintiffs to compel recalcitrant parties like Exxon to address the consequences of their past operations. Yet despite Exxon's failure to perform *any* work at the Refinery Site or even acknowledge that it may be liable to do so, Exxon argues that NYSDEC's (in)actions somehow preclude BUG's citizen suit – even though NYSDEC itself acknowledges BUG's ability to proceed.[5] As explained further below, Exxon's latest dilatory tactics are legally and factually unsupportable, and should be rejected.

## I.    BUG'S CITIZEN SUIT IS APPROPRIATELY PLEADED AND WITHSTANDS EXXON'S *TWOMBLY/IQBAL* CHALLENGE.

Exxon first attacks BUG's claim under the "plausibility" requirement of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (*See* Exxon

---

[4] Section II of Exxon's brief relies on selective quotation from *Meghrig* for the proposition that "[i]t has long been recognized that the purpose of RCRA does not include 'effectuating the cleanup of toxic waste sites.'" (Exxon Mem. at 9.) (emphasis in original). *Meghrig* involved a party seeking to recover cleanup costs, and not injunctive relief; the court's holding was limited solely to this issue. *See Meghrig*, 516 U.S. at 481. On the page cited by Exxon, the Court specifically notes that

> [u]nder a plain reading of [RCRA], a private citizen suing under § 6972(a)(1)(B) could seek a mandatory injunction, i.e., one that orders a responsible party to "take action" by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, *i.e.*, one that "restrains" a responsible party from further violating RCRA.

*Id.* at 484. That is exactly what BUG here seeks to do.

[5] NYSDEC's November 2017 response to BUG's notice of intent to sue warned BUG that "[i]n the event [BUG] decides to proceed with this litigation … please be aware that the Department will voice its objection to any language in a citizen suit settlement that would purport to have a preclusive effect on the Department's ability either to proceed with enforcement or remedial actions, or to recover any costs incurred by the Department." (Compl., Ex. A at 2.) Obviously a citizen suit cannot be settled if it is dismissed.

Mem. at 8-14.) "[T]o present a plausible claim at the pleading stage, the plaintiff need not show that its allegations … are more likely than not … as would be required at later litigation stages such as a defense motion for summary judgment." *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 184 (2d Cir. 2012) (citing cases). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 182 (citing *Iqbal*, 556 U.S. at 678). When considering a Rule 12(b)(6) motion, "the court is required to proceed on the assumption that all the [factual] allegations in the complaint are true. Even if their truth seems doubtful, Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 185 (internal citations removed) (citing *Twombly*, 550 U.S. at 556).

Under this standard, BUG's Complaint states a plausible RCRA claim and should not be dismissed. As alleged in the Complaint (and as discussed further below), BUG sued Exxon under RCRA because: (a) Exxon's Refinery, which surrounded (and provided energy for) BUG's MGP, released contamination that is now migrating to BUG's former MGP Site, which contamination BUG will be forced to clean up unless Exxon is required to address it; (b) Exxon has refused to investigate or remediate its former operations; and (c) New York regulators have refused to compel Exxon to remediate Exxon's former operations even though BUG provided them with statutorily required notice prior to filing suit.

Exxon does not (and cannot) contradict the facts as alleged in the Complaint. Instead, Exxon argues that a RCRA citizen suit is unavailable here and that BUG's claims with respect to the Refinery Site are "implausible" (Exxon Mem. at 9-17) because BUG has investigated its neighboring MGP Site, or because regulators will at some point in the future – or should have, at some point in the past – demand that Exxon (or another party) investigate and remediate its

former refinery. (See Exxon Mem. at 12.) This argument tacitly confirms the fact that NYSDEC has yet to compel Exxon to investigate and remediate the Refinery Site; hence there is no lack of factual plausibility to BUG's allegations that Exxon's contamination remains at the Refinery Site, no statutory bar to this suit, and no reason why the Court should refuse to hear it.

### A.     RCRA Explicitly Allows This Lawsuit.

RCRA "states broadly that 'any person' may commence a RCRA lawsuit" to abate imminent and substantial endangerments to health or the environment. *Nashua Corp. v. Norton Co.*, 116 F. Supp. 2d 330, 356 (N.D.N.Y. 2000). There are few statutory barriers to a RCRA action. Indeed, a citizen's action may "be commenced" unless EPA[6] or a state agency triggers one of a handful of statutory bars in 42 U.S.C. §§ 6972(b)(1)(B) and (C), such as when the State "has commenced and is diligently prosecuting" its own RCRA enforcement suit. 42 U.S.C. § 6972(b)(1)(C).[7] The RCRA statutory bars are to be construed narrowly. For example, the so-called 'diligent prosecution' bar in "subsection (b)(1)(B) bars a RCRA citizen suit for a RCRA violation only if the [citizen] suit was 'commenced' after the government 'has commenced' a [RCRA] lawsuit, not if the citizen suit was filed first." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011). It is particularly telling that Exxon does not even argue that any of these statutory bars has been triggered, instead arguing (in effect) that their reach should be expanded beyond the plain language of the statute.

---

[6] Exxon does not allege that EPA has taken any action with respect to the Site.

[7] The other statutory bars in 42 U.S.C. § 6972(b)(1)(C) apply when a State "is actually engaging in a removal action under [CERCLA, 42 U.S.C. § 9604]" or "has incurred costs to initiate a Remedial Investigation and Feasibility Study under [CERCLA, 42 U.S.C. § 9604] and is diligently proceeding with a remedial action under that Act." Neither applies here, as shown by the fact that NYSDEC's November 2017 and January 2018 letters threaten to begin an investigation of the Refinery Site and the MGP Site at some point in the future.

RCRA's notice requirements for a citizen suit afford the defendant and the State the opportunity to initiate cleanup activities to avoid litigation. BUG served a 90-day notice of intent to sue under RCRA upon Exxon and NYSDEC on September 21, 2017, in accordance with 42 U.S.C. § 6972(b)(2)(A). (Compl. ¶ 66.) BUG filed this lawsuit on December 22, 2017. Neither the State nor Exxon took any action during that statutory period that would have barred BUG's citizen suit. NYSDEC's letters threatening future action do not trigger any statutory bar. *Echternach v. D.H. Martin Petroleum Co.*, Case No. 97-C-3802, 1997 WL 627646 at *2-3 (N.D. Ill. Sept. 30, 1997); *see also* 42 U.S.C. § 6972(b)(1)(C); *Adkins*, 644 F.3d at 492-93. Exxon's citation to them is a smokescreen intended to distract the Court from the fact that no State action has been taken that would bar BUG's citizen suit.

In fact, RCRA's citizen suit provisions plainly contemplate and authorize citizen suits "going forward *even if a federal or state agency files a later parallel action*." *Adkins*, 644 F.3d at 498 (emphasis original). RCRA's legislative history supports this analysis and signals that Congress generally favored RCRA citizen suits proceeding:

> Although the Committee has not prohibited a citizen from raising claims under state law in a section 7002 action, the Committee expects courts to exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments.

H.R. Rep. No. 98–198, 1, 98th Cong., 2nd Sess., pt. 1, at 53 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin. News 5576, 5612.

Exxon's gloss on the plausibility standard is effectively an overly broad interpretation of RCRA's statutory bar – *i.e.*, that no citizen suit can be maintained if a state expresses *any* interest in a contaminated site. This interpretation is contrary to the plain terms of the statute and is thus unsupportable. Indeed, this interpretation would essentially license bad behavior on the part of a perennially recalcitrant party like Exxon. Exxon is therefore incorrect that NYSDEC's threat that

8

it may someday initiate a state enforcement action "undermines the factual premise" of BUG's claim, making that claim implausible.[8] (Exxon Mem. at 12.) To the contrary, "[t]he fact that NY[S]DEC … does plan to remediate, albeit at some unknown date, would itself allow a fact finder the reasonable inference of imminent and substantial endangerment." *Lambrinos v. Exxon Mobil Corp.*, Case No. 1:00-cv-1734, 2004 WL 2202760, at *6 (N.D.N.Y. Sept. 29, 2004).[9] It is thus unsurprising that Exxon cites no support for its argument, and even admits that "DEC's letter of intent to sue … is not a bar … to National Grid's pending RCRA citizen suit." (Exxon Mem. at 12 (citing *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, 67 F. Supp. 2d 302, 307 (S.D.N.Y. 1999).)

Exxon has proffered shifting excuses for its recalcitrant actions. In its pre-Motion letter, Exxon relied on *Hudson Riverkeeper Fund, Inc. v. Harbor at Hastings Assoc.*, 917 F. Supp. 251, 256 (S.D.N.Y. 1996) for the proposition that a state complaint naming *no* statute must implicitly involve RCRA and therefore serves to bar a RCRA action on the same facts. (ECF No. 17 at 2.) This reliance is incorrect for two reasons.

First, in *Hudson Riverkeeper* (unlike here) the State had actually commenced an action against the same defendant, concerning the same site, seeking to enforce a cleanup. 917 F. Supp. at 253. While the prior action was filed in state court and did not specifically plead that it was brought under RCRA, the Court in *Hudson Riverkeeper* noted that,

---

[8] Somewhat ironically, Exxon also noted that it was BUG's filing of this suit that led NYSDEC to show interest in investigation of the Refinery Site. (Exxon Mem. at 16.) This interest in the site is not enough to preclude this action. Only a "continuous, persistent, and flexible regulatory" involvement can preclude a citizen suit, as discussed infra. *See, e.g., Sierra Club v. Chesapeake Operating, LLC*, 248 F. Supp. 3d 1194, 1207 (W.D. Okla. 2017).

[9] Following *Lambrinos*, Exxon should understand that this argument fails. There, the Court refused to grant Exxon summary judgment, "as the DEC has not commenced any precluding court action or remediated to the extent necessary to make the issue of injunctive relief moot." See *Lambrinos*, 2004 WL 2202760, at *7.

> [b]ecause of the breadth of its historical statutory and inherent powers the Supreme Court of New York … it is not necessary for a pleader to tell the … Court that the complaint is brought pursuant to RCRA or anything else. The plaintiff need merely identify the transactions or occurrences and the Supreme Court is then able, and bound to do justice under whatever law applies. Therefore, because of this breadth of jurisdiction … it is impossible to say that any lawsuit arising out of an occurrence which implicates the RCRA is *not* being brought pursuant to that suit.

*Id.* at 255. The Court therefore concluded that the prior State lawsuit was "the equivalent of one brought under the RCRA, because as a matter of New York State jurisdiction and procedure, all cases brought in the New York Supreme Court are as a matter of law brought under all applicable federal statutory provisions applicable by their terms to the 'occurrence or transaction' sued on" unless the federal courts had exclusive jurisdiction. *Id.* at 256. Accordingly, the *Hudson Riverkeeper* Court found that the RCRA statutory bar was triggered by the state's prior suit.

Here, however, the State has not filed *any* suit against Exxon relating to the Refinery Site, and therefore RCRA's statutory bar does not apply. In the absence of a state enforcement action, RCRA's citizen suit provision was designed to allow an aggrieved party (like BUG) to enforce cleanup requirements against a recalcitrant polluter (like Exxon). Perhaps this is the reason that Exxon's motion (in contrast to its pre-motion letter) eschews any citation to *Hudson Riverkeeper*.

Second, to the extent NYSDEC's November 2017 letter implicates the Refinery Site, it specifically references New York's Oil Spill Fund, thereby implicating the New York Navigation Law (which relates to discharges of petroleum and protection of waterways, *see* N.Y. Nav. Law § 170). However, there is no indication in the letter whether NYSDEC intends to (or will) enforce the Navigation Law in court or via the administrative enforcement process. (*See* Compl. Ex. A.) If the latter, the law is clear that an administrative enforcement action by NYSDEC does not bar a RCRA citizen suit. *Kara Holding*, 67 F. Supp. 2d at 307 ("Under the clear language of 42 U.S.C. § 6972(b)(1)(B), the only state action capable of precluding a citizen

10

suit under section 6972(a)(1)(A) is a 'civil or criminal action in a court.' This language does not afford any preclusive effect to a state administrative action.").

Given the indisputable absence of a statutory bar to BUG's suit, Exxon attempts to obfuscate the current situation by suggesting that "currently pending [NYSDEC] activity" at the Williamsburg Works site and surrounding parcels renders BUG's claim implausible. (Exxon Mem. at 9.) Exxon also cites to *87th Street Owners Corp.*, 251 F. Supp. 2d 1215, and *Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*, No. 99 CIV. 0275, 2004 WL 1811427, at *11 (S.D.N.Y. Aug. 12, 2004), in arguing that an injunction would be inappropriate here because there is nothing the Court could order Exxon to do that Exxon or NYSDEC is not already doing. (Exxon Mem. at 12-13.)

Yet as stated above, NYSDEC's recent letters make clear that NYSDEC has not initiated *any* formal actions against BUG or – on information and belief – any other parties at the former Refinery Site, the former MGP Site, or the surrounding area. NYSDEC has indicated the *possibility* that it will use State Superfund money to conduct an investigation at the Williamsburg MGP Site (Compl. ¶ 52), and State Oil Spill Fund money to investigate the Refinery Site (*id.* at Ex. A), but no actions are pending. It is therefore quite easy to answer Exxon's challenge for BUG to "identify some action that defendant could be ordered to take that is not already in place thanks to the action of the state agency and that would improve the situation in some way." (Exxon Mem. at 13) (quoting *Kara Holding*, 2004 WL 1811427, at *11). BUG's Complaint does just that when it asks that the Court declare that Exxon is in violation of RCRA, declare Exxon to be responsible for investigation and remediation of the Refinery Site, and enjoin Exxon to investigate and remediate the Refinery Site. (Compl. ¶ 70.) Given Exxon's dedicated refusal to act or take responsibility for its Refinery contamination, *any* movement by Exxon to investigate

and remediate the Refinery Site would improve the situation at both the Refinery Site and the Williamsburg MGP site.[10]

B.      BUG's RCRA Claim is "Plausible" Based on the Imminent and Substantial Endangerment Pleaded in BUG's Complaint.

First, BUG has plead an imminent and substantial endangerment to health and the environment in the form of Refinery contaminants at the Refinery Site and migrating to the MGP Site and surrounding land. (Compl. ¶¶ 7-12, 46-51.) Exxon does not (and, on a Rule 12(b)(6) motion, cannot) challenge either the existence of this contamination or the extent of its operations from the 1860s into the 1900s; in fact, Exxon attached to its motion a 2008 letter stating that NYSDEC "reserves all of its rights concerning … any further investigation or remedial action the Department deems necessary due to … 1. *The off-site migration of petroleum contaminants*" from the former Refinery. (McCusker Certification Ex. H at 1 (emphasis added).)

Nevertheless, Exxon argues that an imminent and substantial endangerment is not plausible, alleging that BUG has performed a decade-long investigation at its neighboring MGP Site under NYSDEC supervision "without accelerated scheduling;" BUG unilaterally terminated the order under which it was remediating its former MGP; and NYSDEC plans activities that are "aimed at remediating [the] MGP Site as well as surrounding parcels." (Exxon Mem. at 9.) None

_____

[10] This also answers Exxon's argument that "there is ultimately no equitable relief that can even be had here." (Exxon Mem. at 12.) Moreover, this argument is inappropriate on a motion to dismiss, as it relies upon a factual premise found nowhere in the Complaint: that NYSDEC's actions would fully and completely address the contamination at the Refinery Site. *Cf. Inc. Village of Garden City v. Genesco., Inc.*, Case No. 07–cv–5244, 2009 WL 3081724, at *6 (E.D.N.Y. Sept. 23, 2009) ("The Court cannot appropriately determine … without the benefit of factual discovery … to what extent plaintiff's [RCRA] claim may go forward [despite an administrative order requiring sampling activities]. This determination is best addressed at the summary judgment stage, or at trial …."). Beyond this, even if Exxon now sought to enter a RCRA order with NYSDEC to resolve this litigation, BUG would be entitled to its attorneys' fees incurred forcing Exxon to this point.

of these allegations dispute any of the facts underlying BUG's RCRA claim or establish that the claim is somehow "implausible."

Exxon's proposed timeline derives from its misunderstanding of the February 2007 Order on Consent and Administrative Settlement and the August 2007 Modification to that Order (together, the "AOC"). (*See* Exxon Mem. at 5-6.) Exxon implies that the AOC initiated an immediate investigation and remediation of the Williamsburg MGP. It did not. The AOC was simply a pathway to the ultimate resolution of CERCLA liability at the Williamsburg MGP Site and numerous other MGP sites throughout the State. (*See* McCusker Certification Ex. K at 2-3) (listing sites); (McCusker Certification Ex. L at ¶ 4) (same). The fact that the AOC was signed in 2007 does not establish (or even imply) that, as Exxon alleges, investigation and remediation of the Williamsburg MGP Site began immediately and continued for a decade until the AOC's 2017 termination. Nor does it make it implausible that contamination released from Exxon's Refinery has migrated from the Refinery Site to the MGP Site, or that BUG will be forced to clean up Exxon's contamination (*see* Compl. ¶¶ 34-54) unless Exxon is enjoined to do so by this Court.

Nevertheless, Exxon essentially argues that delays in remediation of the Williamsburg MGP make any allegation of an imminent and substantial endangerment implausible. (*See* Exxon Mem. at 18.) This argument misses the point; even if Exxon's timeline were accurate, a delay in investigating or remediating the MGP Site does not reflect a lack of contamination at the neighboring Refinery Site, or make it implausible that the Refinery contamination is continuing to migrate to the MGP Site. The presence of this contamination – which Exxon does not (and cannot) contest – makes BUG's allegations of an imminent and substantial endangerment plausible. "A finding of 'imminency' does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present: 'an 'imminent hazard' may be

declared at any point in a chain of events which may ultimately result in harm to the public.'"
*Dague*, 935 F.2d at 1356 (quoting *Envtl. Def. Fund v. EPA*, 465 F.2d 528, 535 (D.C. Cir. 1972)).
And an endangerment is substantial "if there is reasonable cause for concern that someone or
something may be exposed to a risk of harm … if remedial action is not taken[.]" *United States
v. E.I. du Pont de Nemours & Co*., 341 F. Supp. 2d 215, 247 (W.D.N.Y. 2004) (internal
quotations removed). "'[A] finding that an activity may present an imminent and substantial
endangerment does not require actual harm …. Courts have consistently held that
'endangerment' means a threatened or potential harm and does not require proof of actual harm."
*Dague*, 935 F.2d at 1356 (internal citations omitted) (citing cases).

    *E.I. du Pont de Nemours & Co.* dealt with a similar situation to that found at the Refinery
Site: contamination that had been deposited onsite between 30-70 years prior to suit. Yet unlike
at the Refinery Site, that contamination had been the target of remedial investigations, capping,
and numerous orders. 341 F. Supp. 2d at 224-28. Despite the age of the contamination and the
previous efforts to address it, the court found still found that conditions justified finding an
imminent and substantial endangerment. *Id.* at 251-53. Thus, even under Exxon's counterfactual
timeline, its argument fails to demonstrate that BUG's claim is implausible.

    While admonishing BUG for not acting quickly enough to remediate the MGP Site and
bring this suit, Exxon offers the contradictory argument that its own refusal to act for the "more
than 65 years" since "ExxonMobil and/or its predecessors have … owned or operated the
Refinery Site" absolves it from RCRA liability. (Exxon Mem. at 4.) Exxon's argument appears
to be that its polluting activities occurred so long ago that there is no longer an "imminent and
substantial endangerment," again revealing its failure to understand that the endangerment can
remain as long as the contamination does. *See E.I. du Pont de Nemours & Co.*, 341 F. Supp. 2d

at 224-28, 247-251. Essentially, Exxon asks the court to reward its delays, while criticizing BUG's alleged lack of haste.[11]

Notably, NYSDEC has acknowledged both the serious, significant threat posed by the Refinery's contamination and the legitimacy of BUG's claim. In its response to BUG's RCRA notice letters, NYSDEC demanded that Exxon and other PRPs investigate and remediate the Refinery Site and surrounding land. (Compl., Ex. A at 1-2.) NYSDEC also asked BUG to provide NYSDEC with copies of all pleadings and correspondence in this case, and to avoid any settlement that would "have a preclusive effect on the Department's ability either to proceed with enforcement or remedial actions, or to recover any costs incurred by the Department." (*Id.*) BUG and NYSDEC agree that the serious contamination caused by Exxon's Refinery needs to be investigated and remediated. Exxon's unwillingness to do its duty does not make BUG's legal claim for injunctive relief implausible; rather, Exxon's recalcitrance highlights the need for BUG's desired injunction.

### C. BUG's RCRA Claim is Plausible Based on the Historical Uses of the Refinery Site and the Adjacent MGP Site.

Ignoring the historical context from which this case arises, Exxon argues BUG's RCRA case is implausible because BUG's Complaint "muddl[es] … the historical uses and current conditions of the Williamsburg MGP Site and the former Refinery Site." (Exxon Mem. at 13.) This appears to be an argument that the contaminants on the MGP Site are wholly unrelated to

---

[11] Exxon's argument here may also be understood to assert that the other owners and/or operators at the Refinery over the past 65 years are responsible for contamination at the Refinery and surrounding parcels. This argument also fails. Under this circuit's precedent, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion. … A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson*, 680 F.3d at 185. If other parties are in fact responsible for contamination released at the Refinery, Exxon's remedy is to file third-party claims against them.

the Refinery Site. (Exxon Mem. at 13-14.) Such a factual argument is both unsupported and inappropriate on a motion to dismiss, since "fact-specific question[s] cannot be resolved on the pleadings." *Todd v. Exxon Corp.*, 275 F.3d 191, 2013 (2d Cir. 2001); *see also City of Evanston v. N. Ill. Gas Co.*, 229 F. Supp. 3d 714, 721-22 (N.D. Ill. 2017) (rejecting defendant's argument that contamination was "more plausibly explained" as coming from another source because it "speaks to a factual dispute inappropriate for resolution prior to discovery."); *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 822 (N.D. Ill. 2014) (finding that defendant oil company's "argu[ment] that [plaintiff] has not adequately alleged that the contamination … presents an 'imminent and substantial' threat because it has existed for fifty years … cannot be resolved in its favor at the pleading stage.").

Yet this argument would fail even if it were made at the proper time. Exxon's Refinery was among the largest of its age (Compl. ¶ 9), bordered the Williamsburg Works MGP on both the north and the south (Compl. ¶ 11), used coal to manufacture kerosene (Compl. ¶ 17), "utilize[ed] numerous gravitational and/or physical or chemical oil/water/solid separation units, such as ditches and other conveyances," stor[ed] tar, crude oil, and refined materials in tank bottoms, and disposed into the environment metals, volatile organic compounds, and semi-volatile organic compounds. (Compl. ¶¶ 7-9.) Given the proximity of these facilities, "solid waste and hazardous substances from the Refinery have migrated – and continue to migrate – onto the parcels of land on which the Williamsburg MGP was located." (Compl. ¶ 49.)

The "continued migration of contaminants" from the Refinery Site onto the MGP site preclude BUG from "fully and meaningfully remediating the former MGP site[.]" (Compl. ¶ 50.) Exxon again relies on a purported decade-long BUG investigation at Williamsburg as evidence that BUG can remediate the Williamsburg MGP without Exxon's participation. (Exxon Mem. at

11.) This argument has no merit. As alleged in the Complaint, BUG has had a longstanding interest in investigating and remediating the Williamsburg MGP Site. Initial investigations revealed the presence of chemicals of concern ("COCs") "attributable to the Refinery's historic operation as a petroleum distillation and refining facility…" (Compl. ¶ 46.) Remediation of these Refinery COCs is complicated by their potential "depth ranging from 60 to 90 feet below grade." (Compl. ¶ 47.) Refinery wastes "migrated – and continue to migrate – onto the parcels of land on which the Williamsburg MGP was located." (Compl. ¶ 49.) NYSDEC has requested that Exxon investigate and remediate the Refinery Site. (Compl. ¶ 51.) Exxon has refused to do so.

Once more, even Exxon's purported timeline does not permit it to wash its hands of liability here. Liability under RCRA is joint and several. *See, e.g.*, *Murtaugh v. New York*, 810 F. Supp. 2d 446, 469 (N.D.N.Y. 2011) (finding that "RCRA and CERCLA liability[] [are] joint and several.") BUG does not contest the existence of contamination from its former MGP, but that contamination has comingled with Exxon's Refinery contamination. Exxon is therefore jointly and severally liable for investigation and remediation costs under RCRA.

## II.   EXXON'S PRIMARY JURISDICTION ARGUMENTS ARE INCORRECT AND SHOULD BE REJECTED.

Exxon's next argument is that this Court should dismiss this action and allow state regulators to have "primary jurisdiction" over the Site. (*See* Exxon Mem. at 14-17.) Primary jurisdiction is a limited doctrine. Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given to them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Exxon's primary jurisdiction argument fails for two reasons: first, because Congress intended for courts to exercise their jurisdiction over RCRA suits absent the specific statutory bars discussed above; and second, because NYSDEC remains on the sidelines here.

### A. Primary Jurisdiction is Inappropriate Where RCRA's Statutory Bars on Citizen Suits Have Not Been Triggered.

Abstention under the primary jurisdiction doctrine is either "inappropriate except in truly extraordinary circumstances or … wholly inapplicable in light of RCRA's express delineation of what agency action will preclude a citizen suit." *Stewart-Sterling One LLC v. Tricon Global Rests., Inc.*, Case No. CIV.A. 00-477, 2002 WL 1837844, at *5 (E.D. La. Aug. 9, 2002) (citing cases). "Congress, through the RCRA, conferred jurisdiction upon the federal courts to address the very environmental issues raised by plaintiff's citizen suit and created bars to such suits in the face of specific agency action. Many courts considering abstention and/or dismissal under similar circumstances have determined that where Congress has acted to confer jurisdiction, courts should not act to undo it." *Inc. Village of Garden City v. Genesco, Inc.*, Case No. 07-cv-5244, 2009 WL 3081724, at *9 (E.D.N.Y. Sept. 23, 2009) (collecting cases from district courts in the Second, Fifth, Seventh, Ninth, and Eleventh Circuits rejecting primary jurisdiction in RCRA cases).[12] As explained in detail above, the Complaint in this matter was filed only after regulators were given the ninety days' notice required by RCRA, during which NYSDEC and Exxon failed to take sufficient action to strip BUG's ability to bring suit. Under these circumstances, abstention under the primary jurisdiction doctrine is inappropriate.

RCRA imminent and substantial endangerment suits were created precisely to force recalcitrant parties like Exxon to clean up messes they created. Advocating a "do nothing" approach has long been a tool in the polluter playbook, and for years, Exxon has successfully done just that. Exxon effectively admits as much in its brief by alleging that it has been absent

---

[12] *Accord, DMJ Assocs., L.L.C. v. Capasso*, 228 F. Supp. 2d 223 (E.D.N.Y. 2002) (citing *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999)); *see also N.Y. Comms. for Change v. New York City Dep't of Educ.*, Case No. 11-cv-3494, 2012 WL 7807955, at *12-13 (E.D.N.Y. Aug. 29, 2012) (citing *DMJ Assocs.*), *report and recommendation adopted*, 2013 WL 1232244 (E.D.N.Y. Mar. 26, 2013).

from the site for decades. (Exxon Mem. at 4) ("ExxonMobil and/or its predecessors have not owned or operated the former Refinery Site since 1951 – more than 65 years ago.") While NYSDEC has communicated with the parties about the Site – indeed, BUG provided a key NYSDEC communication as an exhibit to its Complaint – these communications represent the culmination of efforts *by BUG* to have regulators hold Exxon liable, and have resulted in no action by NYSDEC requiring Exxon to address the results of its decades-long Refinery operations. Because NYSDEC has not acted, BUG filed this lawsuit; granting Exxon's motion on this point would, in effect, remove citizen suit jurisdiction altogether by deferring to NYSDEC's longstanding failure to act.

**B.    Exxon Fails to Establish that NYSDEC has Primary Jurisdiction over the Refinery Site.**

Exxon's argument in favor of primary jurisdiction relies on only three out-of-circuit district court cases: *Sierra Club v. Chesapeake Operating, LLC*, 248 F. Supp. 3d 1194 (W.D. Okla. 2017); *Davies v. Nat'l Co-op. Ref. Ass'n*, 963 F. Supp. 990, 997-1000 (D. Kan. 1997); and *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1349-50 (D.N.M. 1995). (Exxon Mem. at 14-15.) Each of these cases is wholly distinguishable.

In *Davies*, the defendants and the state agency had "entered into consent orders pursuant to which defendants are obligated to cooperate … in investigating and remediating the potential threat to health and the environment from the contamination at the site." 963 F. Supp. at 998. Moreover, the plaintiffs' proof showed that the wastes at issue would not reach relevant receptors for more than a century and remediation would be difficult; under those circumstances, the court stated that it would allow state regulators to continue active investigation and remediation efforts, which had been ongoing for more than a decade. *Id.* at 998-1000.

In *Friends of Santa Fe*, primary jurisdiction was invoked related to a state discharge plan – functionally a permit – that had been established by state regulators in order to control acid mine drainage. 892 F. Supp. at 1344, 1347. Defendants, "at the direction of [State] officials, addressed containment of AMD [acid mine drainage]" and included "detailed remediation and reclamation plans" in their application for renewal of the discharge plan. *Id.* at 1347. Plaintiffs submitted factual and expert testimony and cross-examined witnesses at public hearings on the discharge plan, and, together with defendants and the State, "executed a stipulation approving of the proposed modification of [the discharge plan]," yet still sought a determination "that the acid mine drainage at the site constitute[d] an imminent and substantial endangerment … under [RCRA]." *Id.* In the context of that extensive involvement by state regulators – and on a motion for summary judgment – the Court determined that the RCRA claims represented an attack on actions and decisions that state regulators had previously reached. *Id.* at 1350.

Here, by contrast, there is no permit at issue; there are no ongoing investigation or remediation efforts at the Refinery Site; no relevant agency proceedings have been initiated; the agency has demonstrated no diligence in requiring cleanup of the Refinery Site; and in fact NYSDEC has allowed the Site to languish for years. In contrast to the active, engaged regulators in *Friends of Santa Fe* and *Davies*, NYSDEC has merely threatened future action, reserved its rights to act in the future, and expressed a desire to be informed while remaining on the sidelines. Given NYSDEC's negligible involvement at the Refinery Site, it is hard to perceive how its actions to date (or in the future) could conflict with any judgment issued by this Court. Moreover, any potential conflict could be preempted by inviting agency comments prior to entry of a remedial order. *See, e.g.*, *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1170 (D. Wyo. 1998) (citing *O'Leary v. Moyer's Landfill, Inc.*, 523 F.Supp. 659 (E.D. Pa. 1981)). Courts routinely

hear RCRA cases and determine whether an imminent and substantial endangerment exists. *See, e.g.*, *Garden City*, 2009 WL 3081724 (denying motion to dismiss RCRA claim under primary jurisdiction doctrine, collecting cases doing the same). While *Davies* and *Friends of Santa Fe* suggest that primary jurisdiction may be more appropriate in a case seeking injunctive relief, such relief is precisely the purpose of a RCRA imminent and substantial endangerment claim, and the nature of the requested relief alone cannot justify invocation of primary jurisdiction.

*Chesapeake Operating* involved collateral challenges to Oklahoma state-issued gas well permits. The *Chesapeake Operating* Court undertook the same analysis used by the *Davies* and *Friends of Santa Fe* courts, but again, none of the pertinent facts of that case finds an analogue here. The current action focuses on four identified, nearly adjacent parcels of land in Brooklyn, New York. (Compl. ¶ 6.) In contrast, *Chesapeake Operating* dealt with injection of waste into wells covering thousands of square miles of Oklahoma, and was therefore "not the sort that a court routinely considers" in a RCRA action. 248 F. Supp. 3d at 1206. The *Chesapeake Operating* court explicitly contrasted the factual allegations to traditional RCRA actions "involv[ing] contamination at or from a single, discrete site," *id.*, and specifically noted that noted that the "plaintiff ha[d] not cited any RCRA endangerment cases similar to the case at bar," which "involve[d] the disposal of wastewater in numerous … wells located across thousands of square miles in Oklahoma." *Id*. at 1206. Given the size and scope of Sierra Club's allegations in *Chesapeake Operating*, "the relief sought … would require the court to operate (and this would amount more to regulation than adjudication) at the confluence of several areas of expertise, including geology, geophysics, hydraulics and petroleum engineering, to say nothing of seismology." *Id.* State regulators, the court held, were "better equipped than the court to resolve" the issues presented by the case. *Id.* at 1207.

In contrast, this is a typical RCRA action, concerning factual circumstances consistent with other cases heard by New York federal district courts applying this statute. *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 476 F. Supp. 2d 275, 281 (S.D.N.Y. 2007) (RCRA action involving cleanup of Exxon's contamination); *Lambrinos*, 2004 WL 2202760, at *6 (same).

The *Chesapeake Operating* court also noted that, while the Oklahoma regulatory agency with jurisdiction had not initiated any formal proceedings, it had already issued orders that could conflict with potential relief from the Court, *see* 248 F. Supp. 3d at 1207, and had "taken a series of action" to alleviate the alleged problems, which "demonstrated diligence in resolving the issues." *Id.* at 1208. As before, the court explicitly contrasted standard contamination cases to the situation before it, where the regulator was "equipped, as a regulatory body, to apply *continuous*, *persistent*, and *flexible* regulatory power" and that "fast, effective administrative action will outdo the judicial process every time." *Id.* (contrasting the situation with typical RCRA cases like *Baykeeper v. NL Industries, Inc.*, 660 F.3d 686 (3d Cir. 2011), *In re MTBE*, *Lambrinos*, and *Maine People's Alliance v. Holtrachem Mfg. Co., LLC,* No. 1:00-CV-00069-JAW, 2001 WL 1602046 (D. Me. Dec. 14, 2001), where "the possibility of implementation of stricter remediation standards by a federal court is not the sort of interference that will call for the application of the primary jurisdiction doctrine.").

Here, there is no "continuous, persistent, and flexible regulatory" involvement at the site. Instead, there is a lengthy history of regulatory inaction. NYSDEC has issued no orders or mandates requiring Exxon to perform any work at the Refinery Site, instead only issuing letters threatening unspecified future action. (Compl. ¶¶ 51-53 and Ex. A.) There is no risk of conflicting orders here.

Finally, the *Chesapeake Operating* Court noted that the injunctive relief sought by Sierra Club favored primary jurisdiction because it "requires scientific and technical expertise, which the [state agency] and its collaborators possess." 248 F. Supp. 3d at 1208. The injunction BUG seeks here is common to most RCRA cases. *See, e.g.*, *Maine People's All. v. HoltraChem Mfg. Co., LLC,* No. 1:00-CV-00069-JAW, 2015 WL 5155573, at \*2 (D. Me. Sept. 2, 2015) (granting RCRA injunctive relief and appointing a Special Master to oversee remediation); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 263 F. Supp. 2d 796, 803, 817 (D.N.J. 2003), *aff'd,* 399 F.3d 248 (3d Cir. 2005) (granting RCRA injunctive relief and appointing a Special Master to oversee remediation and investigation); *Marcas, L.L.C. v. Bd. of Cty. Comm'rs of St. Mary's Cty.,* 977 F. Supp. 2d 487, 504 (D. Md. 2013) (granting RCRA injunctive relief and requiring the parties to submit a joint injunctive order). In contrast, the *Chesapeake Operating* plaintiffs sought an injunction covering hundreds of wells over thousands of square miles, which the court recognized was "not the sort of case that a court routinely considers." 248 F. Supp. 3d at 1206.

Simply stated, RCRA citizen suits were created for situations like this one, where a party such as Exxon refuses to abate an imminent and substantial endangerment arising from its disposal of hazardous waste. Citizen suits exist to force parties to behave responsibly. Exxon has long advocated for a "do nothing" approach and to date, Exxon has been "successful," allowing the Refinery waste to continue polluting the environment and endangering public health. BUG filed this lawsuit to compel necessary cleanup work by Exxon to protect human health and the environment. The Court now has the opportunity and indeed obligation to stop Exxon's evasions. Denying Exxon's motion is a necessary first step in compelling Exxon to fulfill the legal and moral environmental responsibilities it owes to the citizens of Brooklyn.

## CONCLUSION

For the reasons set forth herein and for others which are apparent to the Court, Exxon's

Motion to Dismiss should be denied.

Dated: March 6, 2018

/s/  J. Michael Showalter
J. Michael Showalter (Bar ID JS2757)
Edward K. Roggenkamp, IV (Bar ID ER7738)
SCHIFF HARDIN LLP
666 Fifth Avenue, Suite 1700
New York, NY 10103
Phone: 312.258.5561
Fax: 312.258.5600
Email: mshowalter@schiffhardin.com
Email: eroggenkamp@schiffhardin.com

Russell Selman (admitted *pro hac vice*)
Bradley Rochlen (admitted *pro hac vice*)
Robert Middleton (admitted *pro hac vice*)
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Phone: 312.258.5500
Fax: 312.258.5600
Email: rselman@schiffhardin.com
Email: brochlen@schiffhardin.com
Email: rmiddleton@schiffhardin.com

CH2\20553327.12